UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------x
MITCHELL MIRAGLIA,                          :
an individual,                              :        CASE NO.:
                                            :
            Plaintiff,                      :
                                            :        Judge:
vs.                                         :
                                            :
                                            :        Magistrate:
                                            :
AEG LIVE LLC; and                           :
NEW ORLEANS JAZZ & HERITAGE                 :
FESTIVAL AND FOUNDATION, INC.,              :
                                            :
            Defendants.                     :
---------------------------------------------------x

## COMPLAINT

"I now lift my pen to sign this Americans with Disabilities Act and say: Let the shameful wall of exclusion finally come tumbling down. God bless you all."

- President George H. W. Bush, July 26, 1990

Plaintiff, MITCHELL MIRAGLIA, by and through his undersigned counsel, hereby files this Complaint and sues AEG LIVE LLC (hereinafter "AEG") and NEW ORLEANS JAZZ & HERITAGE FESTIVAL AND FOUNDATION, INC. (hereinafter "FOUNDATION") (collectively "DEFENDANTS"), for declaratory and injunctive relief, attorneys' fees, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), and alleges:

## BACKGROUND

1.    On December 17, 2001, almost fifteen years ago, the NEW ORLEANS JAZZ AND HERITAGE FOUNDATION, INC.[1] entered into a settlement agreement ("the Jazz

---

[1] On January 20, 2005, the New Orleans Jazz and Heritage Foundation, Inc. changed its name to New Orleans Jazz & Heritage Festival and Foundation, Inc.

Fest/DOJ Settlement Agreement") with the United States Department of Justice ("DOJ") in which FOUNDATION agreed to provide various accommodations to persons with disabilities, including the provision of integrated seating, accessible routes, accessible sales counters, and other critically important accommodations.[2]

2.      Despite its explicit knowledge that it must comply with the ADA, FOUNDATION has and continues to violate the ADA by failing to provide equal access to the New Orleans Jazz and Heritage Festival (hereinafter "Jazz Fest") for patrons with mobility-related disabilities, including Plaintiff MITCHELL MIRAGLIA.

3.      The Jazz Fest/DOJ Settlement Agreement occurred following "a compliance review by the U.S. Attorney under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12161-12189 of the New Orleans Jazz and Heritage Festival…"

4.      Under the Jazz Fest/DOJ Settlement Agreement, FOUNDATION must provide "Accessible Permanent Seating. The Foundation agrees to provide designated seating for fairgoers who use wheelchairs which complies with the integrated seating standards set forth in ADA Title III Standards, §§ 4.1.3(19), 4.33."

5.      Under the Jazz Fest/DOJ Settlement Agreement, FOUNDATION must provide "Craft Booths. Prior to the Festival, the Foundation will provide craft booth applicants with information regarding the ADA's requirements and their obligation to comply with same. During the Festival, the Foundation will further observe and monitor the configuration of each craft booth with specific attention being paid to the accessible route and accessible sales counter requirements in ADA Title III Standards, §§ 4.2, 4.3, and 7.2."

6.      Under the Jazz Fest/DOJ Settlement Agreement, FOUNDATION must provide "Food

---

2  See Exhibit "A.," pp. 3, paragraph 7.

Booths. The Foundation agrees to ensure that the counters at all of its food booths comply with ADA Title III Standards, § 7.2, 5. to provide at least a 36" wide and 36" high segment."

7.     Therefore, under the Jazz Fest/DOJ Settlement Agreement FOUNDATION was expressly obligated to make certain modifications to Jazz Fest to make it accessible to persons with disabilities.

8.     More recently, in 2012, FOUNDATION received actual notice that their accessible seating locations for their main stages were not adequate for persons with disabilities. In Offbeat Magazine, the premiere New Orleans music periodical, the founder and Editor-in-Chief, Jan Ramesey penned a letter from the editor titled "Jazz Fest for the Gimped and Otherwise Infirm," decrying the changes made in 2012 that moved the accessible seating area to a location "roughly 1000 feet from the stage."[3]

9.     Despite its obligations under the ADA and the Jazz Fest/DOJ Settlement Agreement, FOUNDATION has failed to bring Jazz Fest into compliance with the requirements of the ADA. As a result, DEFENDANTS continue to discriminate against patrons with disabilities, including Plaintiff MITCHELL MIRAGLIA. As a result of DEFENDANTS' failure to remove barriers where it is readily achievable to do so and DEFENDANTS' failure to comply with the DOJ regulations for the ADA, PLAINTIFF has and continues to experience discrimination under Title III of the ADA.

**JURISDICTION AND PARTIES**

10.    This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. § 12181 *et seq.* (hereinafter referred to as the "ADA").

---

3  Last accessed on June 7, 2016 (https://www.offbeat.com/jazz-fest-for-the-gimped/).

This Court is vested with original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

12.     Plaintiff, MITCHELL MIRAGLIA, (hereinafter referred to as "MR. MIRAGLIA"), is a resident of Orleans Parish, Louisiana. MR. MIRAGLIA resides at 2600 Gravier Street.

13.     MR. MIRAGLIA is a qualified individual with a disability under the ADA. MR. MIRAGLIA is a quadriplegic afflicted with cerebral palsy.

14.     Due to his disability, MR. MIRAGLIA is substantially impaired in several major life activities and requires a wheelchair for mobility. Specifically, MR. MIRAGLIA is unable to walk, stand, or use his legs without assistance.

15.     Upon information and belief, FOUNDATION is a corporation incorporated in the State of Louisiana and doing business in Orleans Parish.

16.     Upon information and belief, FOUNDATION is domiciled at 1205 N. Rampart St., New Orleans, Louisiana 70116.

17.     Upon information and belief, AEG is a limited liability company organized in the State of Delaware.

18.     Upon information and belief, AEG is domiciled at 1209 Orange Street, Wilmington, Delaware 19801 and is doing business in Orleans Parish.

19.     Upon information and belief, FOUNDATION is the lessee and operator of the real properties and improvements which is the subject of this action, to wit: The New Orleans Jazz & Heritage Festival, which generally occurs at the New Orleans Fairgrounds, 1751 Gentilly Boulevard, New Orleans, Louisiana 70116.

20.     Upon information and belief, AEG produces Jazz Fest for FOUNDATION and thereby operates Jazz Fest within the meaning of the ADA.

21.     Jazz Fest is an annual event presented by DEFENDANTS and includes hundreds of musical performances, arts and crafts displays, and food and beverage services.

22.     Each year DEFENDANTS construct the stages, tents, and most of the booths on/in which these features are made available to the general public.

23.     DEFENDANTS are obligated to comply with the ADA.

24.     All events giving rise to this lawsuit occurred in the Eastern District of Louisiana, Orleans Parish, Louisiana.

<u>**COUNT I - VIOLATION OF TITLE III OF THE**</u>
<u>**AMERICANS WITH DISABILITIES ACT**</u>

25.     MR. MIRAGLIA realleges and reavers Paragraphs 1 – 24 as if they were expressly restated herein.

26.     The Property is a place of public accommodation, subject to the ADA, generally located at: 1751 Gentilly Boulevard, New Orleans, Louisiana 70116.

27.     MR. MIRAGLIA has visited Jazz Fest numerous times and desires to visit Jazz Fest again in the near future.

28.     MR. MIRAGLIA'S most recent visit prior to filing the original Complaint when he last observed or encountered mobility-related barriers at Jazz Fest was on Saturday, April 23, 2016.

29.     MR. MIRAGLIA has visited Jazz Fest numerous times in the past and during these occasions he has encountered numerous barriers to access.

30.     During these visits, MR. MIRAGLIA had difficulty accessing the goods and utilizing the services offered at Jazz Fest due to many of the architectural barriers which are discussed in Paragraph 34.

31.     MR. MIRAGLIA continues to desire to visit Jazz Fest, but continues to experience serious difficulty due to the barriers discussed in Paragraph 34.

32.     MR. MIRAGLIA intends to and will visit Jazz Fest to utilize the goods and services in the future, but fears that he will encounter the same barriers to access which are the subject of this action.

33.     MR. MIRAGLIA is aware that there are many features, including food service counters, performance stages, cultural tents, and art displays that are not located on an accessible route. As a result of the lack accessible routes, during rain or heavy foot traffic the routes to these architectural features may become impassable to persons in wheelchairs.

34.     Upon information and belief, DEFENDANTS are in violation of 42 U.S.C. § 12181 *et seq.* and 28 C.F.R. § 36.302 *et seq.* and are discriminating against MR. MIRAGLIA due to, but not limited to, the following barriers which were identified during the 2016 presentation of Jazz Fest:

I.     **INACCESSIBLE ENTERANCE**: The Gentilly Street entrance to Jazz Fest was inaccessible due to the following issues:

    A.     At the Gentilly Street entrance to Jazz Fest, there are service counters which are higher than thirty-six inches off the finished floor.

    B.     At the Gentilly Street entrance to Jazz Fest, the required accessible route narrowed to 29 inches in width.

6

II.   **INACCESSIBLE ROUTES**: There are various routes to programs, services, and accommodations which are not located along an accessible route, including but not limited to:

A.   There is no accessible route or ramp provided to the Miller Lite Viewing Area at the Acura Stage.

B.   There is no accessible route to the food vendors near the Acura Stage.

C.   There is no accessible route provided to the Land and Waters tent or the Cultural Crossroads tent.

D.   There is no accessible route to the Louisiana Marketplace.

E.   There is no accessible route to the Louisiana Native Nations.

F.   There is no accessible route to various food vendors throughout the festival.

G.   There are numerous other architectural elements which are required to be on an accessible route but are not located along an accessible route.

III.   **INACCESSIBLE ACURA STAGE**: The Acura stage is inaccessible as a result of the following barriers to access:

A.   A total of twenty-two (22) wheelchair spaces and companion spaces were required at the Acura stage, but only six (6) spaces were provided.

B.   The accessible seating spaces were not an integral part of the seating layout of the Acura stage.

C.   The wheelchair seating spaces were not properly marked with widths and access aisles.

D.   No accessible route was provided to the lawn viewing area at the Acura stage.

IV.   **INACCESSIBLE CONGO SQUARE STAGE**: The Congo Square stage is inaccessible as a result of the following barriers to access:

A.     At the Congo Square stage, while a sufficient number of wheelchair spaces are provided, they are not an integral part of the seating area as they are not adequately dispersed throughout the seating area.

B.     The wheelchair seating spaces were not properly marked with widths and access aisles.

C.     There were wheelchair seating spaces which protrude into the required 36 inch accessible routes.

D.     No accessible route was provided to the lawn viewing area at the Congo Square stage.

V.   **INACCESSIBLE TOILET STALLS**: The toilet stalls are inaccessible as a result of the following barriers to access:

A.     Portable toilets shall be provided at each cluster with no less than 5% of the toilets being accessible. At the 2016 Jazz Fest, there were clusters of toilets which did not have an accessible portable toilet stall.

B.     At the portable toilets which were provided, the toilet room had a measured perpendicular width of 58 inches in lieu of 60 inches minimum.

C.     At the portable toilets which were provided, the sidewall grab bar extended less than 39 inches from the rear wall in lieu of a minimum of 54 inches.

VI.   **INACCESSIBLE GENTILLY STAGE**: The Gentilly stage is inaccessible as a result of the following barriers to access:

A.      At the Gentilly Stage, while a sufficient number of wheelchair spaces are provided, they are not an integral part of the seating area as they are not adequately dispersed throughout the seating area.

B.      The wheelchair seating spaces were not properly marked with widths and access aisles.

C.      No accessible route was provided to the lawn viewing area at the Gentilly Stage.

VII.    **INACCESSIBLE CHILDREN'S TENT**: The Children's Tent is inaccessible as a result of the following barriers to access:

A.      There is no accessible route to the Children's Tent as there is currently only a dirt walking route to the Children's Tent.

B.      A total of five (5) wheelchair spaces and companion spaces were required at the Children's Tent stage, but zero (0) spaces were provided.

C.      There are currently no areas that provide a firm and non-slip resistant ground surface for wheelchair spaces.

D.      The routes throughout the assembly area are non-accessible due to non-firm and non-slip resistant ground surfaces.

VIII.   **INACCESSIBLE ECONOMY HALL TENT**: The Economy Hall tent is inaccessible as a result of the following barriers to access:

A.      A total of thirteen (13) wheelchair spaces and companion spaces were required at the Economy Hall Tent, but only four (4) spaces were provided.

B.      The wheelchair spaces provided do not provide the required marked access aisle for side entry. Additionally, the walking aisle runs through the wheelchair spaces to

9

provide access to the seating.

C.      There are non-firm and non-slip resistant ground surface routes provided within the assembly seating area.

D.      The wheelchair spaces themselves are non-firm and non-slip resistant.

IX.   **INACCESSIBLE JAZZ & HERITAGE STAGE**: The lawn viewing area is inaccessible as a result of the following barrier to access:

A.      There is no accessible route provided to the Jazz & Heritage Stage lawn viewing area.

X.   **INACCESSIBLE SALES AND SERVICE COUNTERS**: The sales and service counters are inaccessible as a result of the following barriers to access:

A.      There were Miller Lite sales and service counters throughout the festival that were excessively high off the finished floor.

B.      There were Coca Cola sale and service counters throughout the festival that were excessively high off the finished floor.

C.      The Strawberry Smoothies / Chocolate Dipped Berries service counter is excessively high off the finished floor.

XI.   **INACCESSIBLE DINING AREAS**: The dining areas are inaccessible as a result of the following barriers to access:

A.      The seating area / tables at the patio paver area adjacent to the racetrack building are not accessible due to a lack of clear floor space.

B.      Near the first food service area, there are zero accessible tables provided for use by patrons with disabilities.

10

C.      Near the second food service area, there are open and covered tables for food consumption, but there are zero accessible tables or seating spaces provided.

XII.    **INACCESSIBLE MEDICAL TENT**: The medical tent is inaccessible as a result of the following barriers to access:

A.      At the accessible route to the medical tenant, there was a vertical change in level greater than 1/4 of an inch.

XIII.   **INACCESSIBLE BLUES TENT**: The blues tent is inaccessible as a result of the following barriers to access:

A.      The wheelchair spaces provided do not provide the required marked access aisle for side entry. Additionally, the walking aisle runs through the wheelchair spaces to provide access to the seating.

XIV.   **INACCESSIBLE JAZZ TENT**: The Jazz Tent is inaccessible as a result of the following barriers to access:

A.      The wheelchair spaces provided do not provide the required marked access aisle for side entry. Additionally, the walking aisle runs through the wheelchair spaces to provide access to the seating.

XV.    **INACCESSIBLE SHERATON NEW ORLEANS FAIS DO DO STAGE**: The Sheraton New Orleans Fais Do Do stage is inaccessible as a result of the following barriers to access:

A.      A total of four (4) wheelchair spaces and companion spaces were required at the At the Fais Do Do / Sheraton stage, but zero (0) spaces were provided.

B.      There is no accessible route provided to the lawn seating area at this stage.

11

35.     Upon information and belief, all barriers to access and ADA violations still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA, even though removal is readily achievable.

36.     Upon information and belief, removal of the discriminatory barriers to access located on the Property is readily achievable, reasonably feasible, and easily accomplished, and would not place an undue burden on DEFENDANTS.

37.     Upon information and belief, removal of the barriers to access located at Jazz Fest would provide MR. MIRAGLIA with an equal opportunity to participate in, or benefit from, the goods, services, and accommodations which are offered to the general public at the Jazz Fest.

38.     Upon information and belief, in the event removal of the barriers is not readily achievable, DEFENDANTS have failed to otherwise make their goods and services available to MR. MIRAGLIA, including, but not limited to the provision of curbside service where removal of the barriers is not readily achievable.

39.     Independent of his intent to return to the Property as a patron, MR. MIRAGLIA additionally intends to return as an ADA tester to determine whether the barriers to access stated herein have been remedied.

40.     MR. MIRAGLIA has been obligated to retain the undersigned counsel for the filing and prosecution of this action. MR. MIRAGLIA is entitled to have his reasonable attorneys' fees, costs, and expenses paid by DEFENDANTS, pursuant to 42 U.S.C. § 12205.

          WHEREFORE, MR. MIRAGLIA demands judgment against DEFENDANTS, and

requests the following injunctive and declaratory relief:

    a.   That this Court declare that Jazz Fest is in violation of the ADA;

    b.   That this Court enter an Order directing DEFENDANTS to alter Jazz Fest to make it accessible to and useable by individuals with mobility disabilities to the full extent required by Title III of the ADA;

    c.   That this Court award reasonable attorneys' fees, costs (including expert fees), and other expenses of suit, to MR. MIRAGLIA; and

    d.   That this Court award such other and further relief as it deems necessary, just and proper.

Respectfully Submitted,

THE BIZER LAW FIRM
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By:/s/ Andrew D. Bizer
        Andrew D. Bizer